Good morning, Your Honor. I'm Kaylee Moran from the Federal Defender's Office of Eastern Washington and Idaho representing Michelle Wing. Glad to have you here, Ms. Moran. Glad to be here, Your Honor. I'd like to lead by saying that I believe in this case that there was significant procedural error and as such the court doesn't necessarily need to even address the issues of substantive error because if procedural error is found that's significant, that would require reversal. In this case, I believe that there were two significant procedural errors. The first is the unspecified enhancement that was applied. The district court added a two-level enhancement for which it never specified directly what that enhancement was for. There was a recitation by the district court of a number of ideas or thoughts that the court had in adding that two-level enhancement, including identity theft. The court discussed tax issues, income tax evasion. Why does it have to be specified? Why isn't it just as aptly characterized as a variance? Your Honor, because the court directly said that it was adding a two-level adjustment under the guideline analysis. Well, it said it was going up two points or two levels, but I don't recall that. It obviously did not identify a guideline. That's why you're complaining among other things. But I mean, it just said it was going up two points. And so I say, okay, fine, it can go up two points, but it can it can accomplish that simply by variance from the guideline range. While I think that that is true, it's important and to provide meaningful appellate review, it's important for the district court to specify exactly the reason that it's doing so. I know why it did it. It thought that identity, that the theft had been stolen, and it thought that taxes hadn't been paid, and it thought a whole lot of other things bad went on that weren't accounted for by any, necessarily, altogether by any discrete guideline. While that may be true, the way I see the way the court increased that, increased the level by two levels, is there was a discussion about the guidelines, and then this two-level enhancement was added. It wasn't added as one of the 355-3A factors, so there wasn't some sort of separate variance that was discussed that was under the 355-3A factors. In fact, the guideline range was changed, wasn't it? And that's the second thing I was going to say, is the guideline range itself at the, when the court made its final recitation, said that the guideline range was now adjusted upwards. So this wasn't a variance under 355-3A, this was a guideline adjustment upwards. So as I understand it, then you're really saying if it were a variance, it would not have changed the guideline range, it would have only been added as a result of the 355-3A factors. Right, and I believe that that requires a separate analysis. So the fact that the court had a recitation of the reasons that it thought of their upward departure, or adding the guidelines was there, adding those two levels was there, didn't, they didn't ever tie that to the specific, to any specific guideline provision. And in fact, the guideline provision that the government argues wouldn't cover what the conduct was that the district court was addressing. Is your problem he didn't use the magic word variance? No, that's, I don't think that that's it. I think that when we go back to what's procedural error, procedural error is one, the first thing we have to start with, the benchmark is what the guidelines are. I understand, but he, Judge Nielsen, went on several occasions on the record, particularly I think page 187 of the record, expressing the reasons he was adding the two points. Now, he didn't directly tie him to a ground for an upward departure, but he did have identity theft, he did have filing false income tax returns, and profound, and he specifically, purposefully used the word profound victim impact because of the bankruptcies. Those are all considerations of the 3553A factors, aren't they? I think they could be in this particular situation though, and in order to have meaningful procedural process, and this is what the Supreme Court and the circuit have all said, you have to start by calculating the guidelines correctly. If the guidelines are not calculated correctly, or if we don't hold courts to those standards of we have these guidelines, they need to be calculated correctly, and then we move to the 3553A factors. That's how we have things set out. If we skip ahead and don't address or allow courts to basically add guideline ranges or change guideline ranges without specifically tying into the text of the guidelines, that's a procedural error. Let's talk about the second procedural error, which I note you want to suggest, and that has to do with the obstructive conduct. I guess I'm trying to figure out how I can join what you're saying in this procedural error argument when I read note one of the guidelines 3C1.1 where it says, obstructive conduct, that occurred prior to the start of the investigation of the instant offensive conviction, may be covered by this guideline if the conduct was purposely calculated and likely undertaken to thwart the investigation or prosecution of the offense. Seems to me that hits this squarely when I'm reviewing this on a clear error review. Your Honor, I would respectfully disagree with that and the reason being... Isn't that what the note says? It is what the note says. And isn't it clear error review? I don't believe it would be a clear error review. Why? Because there was an objection made that was that... So what? He's abuse of discretion at least. I mean, all we're talking about now is whether the evidence that's in this particular matter equals what the note one of the guidelines is. That's correct. However, you have to look at the conduct itself and that was with regards to a probation officer in a supervised release matter, which was separate from any criminal investigation that was ongoing. It's a very common occurrence for someone that's on supervised release to commit a new offense, unfortunately. Well, as I understand it in this instance, the parole officer became involved in the investigation itself. After the fact, I believe that was the case, not while it was ongoing. The probation officer was supervising this person and this person wasn't honest that they were committing new criminal conduct. I think there would be some Fifth Amendment implications. A person doesn't have to come forward and report to a probation officer, I'm committing new crimes. No, but doesn't when they comply with the conditions of supervised release, are you saying that the Fifth Amendment in essence says if they're committing new crimes, violating rules of supervised release, that it can never be an obstruction of justice if the conduct that they're performing actually constitutes the new offense, which is like the case we have here? No, I would say that, I mean, I would hesitate to use the word never, but I think that in this particular fact situation, this person was on supervised release. They were not honest with their probation officer and that certainly was the basis for separate supervised release violations. However, the way this was reported on Ms. Wing, that she should have to affirmatively report what was going on in order for this not to have been obstructive conduct. He said that she had a duty to comply with the rules of supervised release and had she done that, this crime would, I think in using the district court's words, have been nipped in the butt. Well, that's true. That would always be true. If a person on supervised release came forward and always said, I'm committing new offenses. No, I don't mean saying I committed new offenses. If she would have just said, I'm employed and not said, I'm not employed. If she would have said, I'm buying houses and pickups and that sort of thing rather than I'm not buying anything. Those kind of things would have led to perhaps something more, wouldn't it? I think that's a possibility, but that again is a supervised release violation. That's not obstructive conduct. That's not someone affirmatively doing something to thwart an investigation. So I think it's just a different situation. Well, I understand why you're reading your language, and I don't think that we're intending to punish by these particular matters. But my worry is that in this particular instance, under the standard of review that I have, I'm having a tough time with note one. With, I'm sorry? Note one. Your Honor, as I said earlier, I believe that whether or not the district court applied the guidelines correctly is not a clear error standard. You call it what you want to. They call it an abuse of discretion. I don't see an abuse. I see that I'm out of time, so. Thank you. Thank you. Good morning, Jill Bolton for the United States. The defendant in this case, as the court is aware, was on supervision out of the District of Montana when she committed all of the crimes at issue in this sentencing proceeding. The argument that I would submit is attempting to be made by the defendant in this case is that somehow, if you're on supervision, you cannot receive any supplemental enhancement to your sentencing because you shouldn't have to tell your supervised release officer where you live or where you're employed or where you're traveling to or what you're buying, none of which I would submit to the court implicate her Fifth Amendment privileges. And this is as to the second issue, so I'm kind of going in reverse order to what the defendant opened with. That, I would suggest to this court, is a ludicrous interpretation of the sentencing guidelines. What? But you would agree, you would agree, wouldn't you, Ms. Bolton, that if you read the language, it seems to suggest it wasn't intended to punish the instruction, it was intended to punish the obstruction of investigations, but not the hiding of criminal activity. Right. So it seems to me that this is a fact-oriented, if you will, investigation, and in this instance, I guess the facts would suggest that the parole officer was in fact a part of the investigation. Absolutely. The job, I would submit, of a probation officer following an individual on post-release supervision after they've been to prison, especially in this case on an embezzlement case out of the District of Montana, released, allowed to move to Spokane, Washington, on courtesy supervision by an officer there, under those circumstances, the idea that the defendant can hide all of her activities and not, and then through that hiding of those activities, not submit to new criminal activities and not be obstructing the role of that supervised release officer. The role of the officer at that stage is to prevent her from committing new crimes. Had she simply revealed, I'm working for this marketing company, and by the way, I have complete control of their books, all it would have taken was a phone call from that supervised release officer to her employer to suggest that, well, you might want to watch out for this particular individual because she's stolen money from a bank before. That would have thwarted the crime. It would have prevented the crime, and therefore, in the government's view, the role of the supervised release officer is to prevent new crimes and therefore assist with law enforcement roles, preventing crime. She was not allowed to do that in this case, the supervised release officer, because the defendant obstructed her. So let's move then to the two-level enhancement. Yes, and the defendant, I would suggest, is attempting to split hairs as to suggest that because the court didn't cite it as specifically as a violation or an enhancement under United States Sentencing Guideline 2B1.1B1, yes, B1, excuse me, B10, that therefore it can't be an ID theft enhancement. Well, but the bottom line is the first time I've ever heard anything about 2B1.1B10 is in the government's brief. And that may be true. If I read the record, the court doesn't say anything about that. The court says, well, there was identity theft, and yes, there was a false tax return, and there was extreme impact. So I guess that I'm going to give three level, or two-level adjustment. Now, my worry is, isn't it a guess which one he did it for? Your Honor, I would submit that, first of all, this court has said that district judges don't have to identify the specific guideline provision. Under Cardey, what this court has said is that district judges are presumed to know the law. Well, we understand they're presumed. I guess I'm trying to figure out then, since he moved the guideline range, rather than doing it under 3553, what can I suggest? Well, what you can presume from the record is the district judge's specific words, which were, this was repeated identity theft. He said that over and over. He said tax violations, too. And so, anyway, he has identified identity theft. And under the guidelines, that is a specific provision. Whether he calls it identity theft, or an enhancement under 2B1.1, specifically, I would submit we can presume exactly what he meant, and that was an ID theft enhancement. Now, let me ask you, let me ask you a question. Looking at it upside down, I understand that, that the 3553A factors kind of, in effect, have now substituted for what we would have thought of in the old days as an upward departure. But, that doesn't mean that they, it has to be under 3553A in order, nevertheless, to be an upward departure, or variance. Does it? Does it need to be a, an upward departure? Is that, is that the question? No, I'm saying, do you have to refer specifically to the 3553A factors in order to make a sentence that's not within the identified guideline range? A properly thought of variance. Or is a variance only under 3553A? Well, I think that 3553A. Look, Judge Smith, Judge Smith's concern is that the, the district judge went up from the guideline range. But he didn't label what he did, a variance or an upward departure. Or a consideration of 3553A. So, does he have to, in order for it, nevertheless, to be a valid variance or upward departures that were in the old days? Under CARDI. I think I understand the question now. And the government's response would be no. And why not? Well, if you. Under CARDI. Under CARDI. Under, under the 3553A. I remember it well. Themselves. If you look at those factors, they are very broad and all encompassing. History and characteristics of the defendant. Nature and circumstances of the offense. And the, and the judge in this case, whether you find that it's, he, whether you make the presumption that he did an identity theft enhancement, as he identified on the record, was a basis for this two level enhancement. Or whether this court finds that it's based on the 3553A factors. Because the defendant caused the bankruptcy of these businesses. Whether it's because of the failure to file the tax returns for the additional $800,000 in income that the defendant obtained through this crime. Those would all fit under the 3553A factors. And I think that what this court can do is look at. My worry, Ms. Bolton, and I didn't mean to interrupt your, your answer of her question. But my worry is this. As I understand a variance, this takes place by correctly calculating the guideline range. And then going above the guideline range based on 3553A analysis. That's CARDI. In this particular instance, that didn't happen. The guideline range didn't stand, and then we had an upward departure. We had a recalculation of the guideline range right in the middle of trying to determine what it was. And we had no specific words that said why we're doing it. We got, we can guess why he did it, but we got nothing to suggest why he did it. He could have either done it by false returns. He could have done it by impact. He could have done it by identity theft. And I guess I'm, he didn't ever look at 2B1.1B10, that's your idea of a good time. I'm trying to say, in CAR, given CARDI, this time that it was upwardly done, the guideline range was switched up, this isn't a variance. Is, don't I have to send that back for CARDI? No, and I think that what the court should do. What is the, what is the case you rely on, on telling me that? Well, I, I rely on this court's decision in the Gall case and the, and the CARDI case. Concerning the presumption that is afforded to district judges when they sentence. Now, there is no requirement that district judges identify the specific guideline provision. What I think this court should find is that, what happened in this case, is that the district judge found an ID theft enhancement. He put that into his calculation of the guideline range, two level enhancement. Frankly, I think you could just as easily say, and that's what I was trying to do, I was trying to look at the PSR and suggest that he was using the PSR. But, when I look at the PSR, they don't talk about two increases for identity theft. They talk about one increase for identity theft and one increase for victim impact. He didn't say that. So, I guess I'm, again, I, I don't like this. You know I was a district judge yourself. I don't like this, but this is, I mean, if there's one thing that's on procedural error, it's that you correctly calculate the guideline range before you start. So, give me a good case, and I'm glad to go with you. Well, and I think if you look at the judgment of the district court, it identifies the basis for the sentence and identifies the enhancements. So, it's before this court as part of the record, and what this court can do is that based on the record, it can give deference to the district court that the district court knew the law. If this court were to decide, okay, this is procedural error, we need to send it back. What, as we sit here today, what is the prejudice to the defendant of this procedural error? There's all kinds of. Is that a harmless error argument, or what? Are you making a harmless error argument? Well, yes. If there was, if there, if there was error, then what would be the, what would be the harm to the defendant? It, it's not specifically identified. I think, first of all, I think the judge did specifically identify all of those bases for the increase. There is, there's nothing to suggest that there's going to be any different result on return, and there's nothing to suggest that the judge, when he entered his sentence, was somehow confused about the applicable guideline range. He identified it. Thank you for your argument. Thank you. Yes, you had another question. I do not have. I do not have another question. He does not have another question. Oh, sorry. So, thank you, Ms. Bolton. I think you have a couple of seconds. All right, over. All right, then this case is submitted. Thank you for the argument. Thank you. Case 09-30369, U.S. versus Wing, is submitted.
judges: Cebull, Rymer, Smith N. R.